DR. JOSEPH REINKEMEYER AND PATRICIA REINKE-MEYER, APPELLANTS, *v.* SAFECO INSURANCE COMPANY OF AMERICA, RESPONDENT.

No. 34507

January 30, 2001                                           16 P.3d 1069

---

[5]THE HONORABLE CLIFF YOUNG, Justice, did not participate in the decision of this matter.

*Leverty & Associates* and *Matthew L. Sharp,* Reno, for Appellants.

*Erickson Thorpe & Swainston, Ltd.,* and *William G. Cobb* and *Paul M. Bertone*, Reno, for Respondent.

## OPINION

*Per Curiam:*

The United States District Court, District of Nevada, has certified two questions to this court pursuant to NRAP 5.[1] The first question is whether NRS 687B.385, which prohibits the cancellation or nonrenewal of certain types of insurance policies, applied to homeowner's insurance policies prior to a 1997 amendment, which expressly limited the statute's applicability to automobile insurance policies. The second question is if the pre-1997 version of NRS 687B.385 did apply to homeowner's insurance policies, whether the statute violated the United States and Nevada Constitutions.

We conclude that the pre-1997 version of NRS 687B.385 did apply to homeowner's insurance policies. Although we have no authority under NRAP 5 to answer the second question concerning the constitutionality of the statute under the United States Constitution, we conclude that the statute is not facially unconstitutional under the Nevada Constitution.

### FACTS AND PROCEDURAL HISTORY

Dr. Joseph Reinkemeyer and Patricia Reinkemeyer were insured by Safeco Insurance Company of America under a homeowner's insurance policy. Between 1989 and 1993, the Reinkemeyers submitted three claims under the policy totaling over $200,000.00. The losses were not the fault of the Reinkemeyers. Safeco declined to renew the Reinkemeyers' insurance policy in 1994.

The Reinkemeyers sued Safeco claiming that Safeco violated various provisions of NRS 687B.310 through NRS 687B.420, which govern the cancellation and nonrenewal of certain types of insurance policies. Specifically, the Reinkemeyers contended that NRS 687B.385 prohibited Safeco from declining to renew their policy. At the time Safeco declined to renew the Reinkemeyers' policy in 1994, NRS 687B.385 provided:

> An insurer shall not cancel, refuse to renew or increase the premium for renewal of a policy of casualty or property

---

[1]NRAP 5(a) provides that:

The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

insurance as a result of any claims made under the policy with respect to which the insured was not at fault.

1987 Nev. Stat., ch. 466, § 1, at 1063.[2] Safeco admits that the losses were not the fault of the Reinkemeyers.

NRS 687B.310 limits the applicability of NRS 687B.385 to certain types of insurance contracts. Specifically, NRS 687B.310(1) provides:

> NRS 687B.310 to 687B.420, inclusive, apply to all binders and all contracts of insurance the general terms of which are required to be approved or are subject to disapproval by the commissioner, except as otherwise provided by statute or by rule pursuant to subsection 3.

The United States Magistrate Judge found that the provisions of NRS 687B.310 through NRS 687B.420 do not apply to contracts of homeowner's insurance because there is no requirement that the Insurance Commissioner approve or disapprove of the general terms of such contracts. The magistrate also found that if NRS 687B.385 applied to this action, the statute would be unconstitutional because it did not provide for a fair and adequate return.

The United States District Court Judge adopted that portion of the magistrate's report and recommendation finding that the provisions of NRS 687B.385 concerning cancellation and nonrenewal did not apply to homeowner's insurance contracts and granted Safeco's motion for summary judgment. Because the United States District Court Judge concluded that NRS 687B.385 did not apply to homeowner's insurance policies, he never reached the constitutional issue.

The Reinkemeyers appealed this decision to the United States Court of Appeals for the Ninth Circuit. Pursuant to NRAP 5, the Ninth Circuit certified the following question to this court:

> Is a homeowner's insurance policy, like the one at issue in this case, a contract of insurance the general terms of which are required to be approved or are subject to disapproval by the Commissioner of Insurance, as provided by NRS 687B.310?

In the unpublished order answering this certified question, this court recognized that there is no statutory provision requiring the commissioner to approve the terms of homeowner's insurance policies.[3] However, this court concluded:

---

[2]In 1997, the legislature amended NRS 687B.385 by replacing the words "casualty or property insurance" with "motor vehicle insurance covering private passenger cars or commercial vehicles." 1997 Nev. Stat., ch. 603, § 22.5, at 3033.

[3]This court's unpublished order answering the Ninth Circuit's certified question was published as an appendix to the Ninth Circuit's

[A] homeowner's insurance policy is a contract of insurance, the general terms of which are subject to disapproval by the Commissioner of Insurance, and are subject to the cancellation and nonrenewal provisions of NRS 687B.310 to 687B.420, except to the extent that such a policy provides insurance for home protection as defined in NRS 690B.100.[4]

Based on this answer, the Ninth Circuit vacated the judgment in favor of Safeco and remanded the matter to the United States District Court.

Safeco then filed a new motion for summary judgment arguing that the 1997 amendment is evidence that the legislature never intended NRS 687B.385 to apply to homeowner's insurance policies, but only to automobile insurance policies. Safeco's new motion for summary judgment also contends that the cancellation and nonrenewal provisions of NRS 687B.385 are unconstitutional because the statutory scheme does not guarantee a fair and adequate return.

## DISCUSSION

*Whether NRS 687B.385, prior to the 1997 amendment, applied to homeowner's insurance policies*

As noted above, at the time Safeco declined to renew the Reinkemeyers' insurance policy in 1994, NRS 687B.385 prohibited an insurer from refusing to renew a policy of casualty or property insurance as a result of any claims made under the policy with respect to which the insured was not at fault. Safeco admits that the losses were not the fault of the Reinkemeyers. In 1997, the legislature amended NRS 687B.385 by replacing the words "casualty or property insurance" with "motor vehicle insurance covering private passenger cars or commercial vehicles." 1997 Nev. Stat., ch. 603, § 22.5, at 3033.

Safeco primarily relies on the legislative history of the 1997 amendment in support of its contention that the legislature intended the pre-1997 version of NRS 687B.385 to apply only to automobile insurance policies, not homeowner's insurance policies. The Reinkemeyers contend that the plain language of the pre-1997 version of NRS 687B.385, as well as the legislative history

---

opinion. *Reinkemeyer v. Safeco Ins. Co. of America,* 166 F.3d 982, 985-86 (9th Cir. 1999).

[4]NRS Chapter 690B contains special provisions governing the cancellation and nonrenewal of insurance policies for home protection. Therefore, insurance for home protection is not subject to NRS 687B.385 through NRS 687B.420.

of that bill, makes it applicable to homeowner's insurance policies. They also argue that this court has already determined, in its answer to the Ninth Circuit's certified question, that NRS 687B.385, prior to the 1997 amendment, applied to homeowner's insurance policies.

In the order answering the Ninth Circuit's certified question, this court concluded that a homeowner's insurance policy is ''subject to the cancellation and nonrenewal provisions of NRS 687B.310 to 687B.420.'' The precise question that the Ninth Circuit certified to the Nevada Supreme Court was the following:

> Is a homeowner's insurance policy, like the one at issue in this case, a contract of insurance the general terms of which are required to be approved or are subject to disapproval by the Commissioner of Insurance, as provided by NRS 687B.310?

The question currently certified by the federal district court, however, is not whether the general terms of homeowner's insurance policies are required to be approved or are subject to disapproval by the Insurance Commissioner. Rather, the instant question is whether the pre-1997 version of NRS 687B.385, in light of the legislative history of the 1997 amendment, applied to homeowner's insurance policies. Our answer to the Ninth Circuit's certified question never considered this issue.[5] Therefore, our answer to the Ninth Circuit's certified question is not controlling.

We now turn to the question certified to us by the United States District Court. Prior to the 1997 amendment, NRS 687B.385 applied to ''casualty or property insurance.'' Safeco contends that, despite this language, the legislature intended the statute to apply only to automobile insurance. NRS 687B.385 was amended in 1997 by the passage of A.B. 578. Safeco relies on testimony presented to the Assembly Committee on Commerce which indicated that A.B. 578 did not make substantive changes to existing law, but merely clarified that the prohibitions contained in NRS 687B.385 applied only to commercial or private passenger insurance policies. We reject Safeco's argument.

[Headnote 2]

''[T]he authorities state that 'testimony before a committee is of little value in ascertaining legislative intent, at least where the

---

[5]In fact, the Ninth Circuit specifically recognized that this issue was not certified to the Nevada Supreme Court, and the Ninth Circuit ''decline[d] to address the issue because it was not reached by the district court and was not fully briefed by the parties.'' *Reinkemeyer*, 166 F.3d at 985. The Ninth Circuit specifically stated that Safeco may raise this issue in the United States District Court on remand. *Id.*

committee fails to prepare and distribute a report incorporating the substance of the testimony.' " *Robert E. v. Justice Court,* 99 Nev. 443, 446, 664 P.2d 957, 959 (1983) (quoting *Seward Marine Services, Inc. v. Anderson,* 643 P.2d 493, 497 n.8 (Alaska 1982)); *see generally* 2A Norman J. Singer, *Statutes and Statutory Construction,* § 48.10 (6th ed. 2000). Furthermore, we conclude that the legislative history of the 1997 amendment should not change the construction of the pre-1997 version of the statute. By the terms of the pre-1997 version of NRS 687B.385, the statute applied to homeowner's insurance policies. This court is "not empowered to go beyond the face of [the] statute to lend it a construction contrary to its clear meaning." *Union Plaza Hotel v. Jackson,* 101 Nev. 733, 736, 709 P.2d 1020, 1022 (1985); *see also Thompson v. District Court,* 100 Nev. 352, 354, 683 P.2d 17, 19 (1984) ("If a statute is clear on its face a court cannot go beyond the language of the statute in determining the legislature's intent.").

Therefore, we conclude that the pre-1997 version of NRS 687B.385 applied to homeowner's insurance policies.

*If NRS 687B.385, prior to the 1997 amendment, applied to homeowner's insurance policies, does the statute violate the United States and Nevada Constitutions*

[Headnote 3]

As a preliminary matter, we conclude that we lack authority to answer the federal district court's second certified question to the extent that it requests an answer based on the United States Constitution because that question would fall outside the purview of NRAP 5. Therefore, we base our answer solely on our interpretation of the Due Process and Takings Clauses of the Nevada Constitution, which virtually mirror the language in the United States Constitution. Nev. Const. art. 1, §§ 8(5) and (6). However, we look to federal caselaw for guidance.

Safeco argues that NRS 687B.385 does not guarantee a fair and reasonable return and therefore, is unconstitutional.[6] The United States Constitution requires that regulations fixing prices must guarantee a fair and reasonable return. *See Guaranty Nat. Ins. Co. v. Gates,* 916 F.2d 508, 515 (9th Cir. 1990) (citing *Federal Power Comm'n v. Hope Natural Gas Co.,* 320 U.S. 591 (1944)).

We conclude that Nevada's Constitution also requires that reg-

---

[6]The magistrate agreed with Safeco on this point. As previously stated, however, the United States District Court Judge did not adopt the magistrate's findings on the constitutional issue because he agreed that the statute did not apply to homeowner's insurance policies.

ulations fixing prices must guarantee a fair and reasonable return on the various classes of business written by insurers authorized to conduct the business of insurance within the State of Nevada. No good reason has been offered by appellants to justify an interpretation inconsistent with the federal constitution. We further conclude that NRS 687B.385 is a form of price fixing since it prohibits an insurer from canceling, refusing to renew, or increasing the premium on certain insurance policies. Therefore, we must consider if Nevada's statutory scheme guarantees the constitutionally required fair and reasonable return.

The Ninth Circuit has decided a similar issue under the United States Constitution involving certain provisions of Nevada's insurance code. In *Guaranty*, eight insurance companies brought an action against Nevada's Insurance Commissioner challenging the constitutionality of Chapter 784 of the 1989 Statutes of Nevada (''Chapter 784''). *Id.* at 509. Chapter 784 mandated a rollback of automobile insurance rates to the levels in effect on July 1, 1988, and required a further reduction of fifteen percent below those rates. Those reduced rates were to remain frozen at that level for one year. *Id.* Chapter 784 prohibited increases in these reduced rates unless the Insurance Commissioner found that the insurer was substantially threatened with insolvency. *Id.*

After concluding that the insolvency provision was unconstitutional, the Ninth Circuit considered whether the insolvency provision could be severed from the remainder of the act. *Id.* at 514-15. The court considered whether other provisions of Nevada's insurance code guaranteed the constitutionally required fair and reasonable return. *Id.* at 515.

NRS 686B.050(1) provides that ''[r]ates must not be excessive, inadequate or unfairly discriminatory.'' Furthermore, ''[r]ates are inadequate if they are clearly insufficient, together with the income from investments attributable to them, to sustain projected losses and expenses in the class of business to which they apply.'' NRS 686B.050(3).

The *Guaranty* court concluded that ''[NRS] 686B.050(3) guarantees only that an insurer will break even [on any given class of business]; it does not guarantee the constitutionally required 'fair and reasonable return.' '' 916 F.2d at 515. As the United States Supreme Court explained:

> [T]he fixing of ''just and reasonable'' rates, involves a balancing of the investor and the consumer interests . . . . [T]he investor interest has a legitimate concern with the financial integrity of the company whose rates are being regulated. From the investor or company point of view it is important that there be enough revenue not only for operating expenses

but also for the capital costs of the business. These include service on the debt and dividends on the stock.

*Federal Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 603 (1944). Therefore, the Ninth Circuit concluded that the insolvency provision could not be severed from the remainder of Chapter 784 "[b]ecause section 686B.050(3) specifically defines 'inadequate' in a constitutionally unacceptable fashion." *Guaranty*, 916 F.2d at 515.

While we find *Guaranty* instructive, we conclude that unlike the statutory scheme at issue in *Guaranty*, NRS 687B.385 is not facially unconstitutional.[7] Because this case is before us as a certified question posed by the federal district court, we need only address the constitutional issue in terms of a facial challenge. We conclude that NRS 687B.385 is not unconstitutional on its face.

Initially, we note that the facial validity of a statute is a question of law which we must answer without any reference to the underlying facts in the case before us. *See Beavers v. State, Dep't of Mtr. Vehicles,* 109 Nev. 435, 438 n.1, 851 P.2d 432, 434 n.1 (1993) ("A 'pure legal question' is a question that is not dependent upon, and must necessarily be resolved without reference to any fact in the case before the court. An example . . . might be a challenge to the facial validity of a statute."). Additionally, our research has determined that successful facial challenges to the validity of price fixing statutes such as the one at issue here are "exceedingly rare." *See State Farm Mut. Auto. Ins. Co. v. State,* 590 A.2d 191, 198 (N.J. 1991) (citing *Guaranty* as an exceptional case where a statute freezing and rolling back insurance rates was declared unconstitutional on its face).

NRS 687B.385 prevents insurers from canceling, refusing to renew, or increasing premiums on certain insurance policies as a result of any claims made under the policy with respect to which the insured was not at fault. An insurer remains free to cancel, refuse to renew, or increase premiums for reasons which can be attributed to the fault of the insured or other, non-prohibited reasons. Therefore, it is clear that an insurer may receive its constitutionally required fair and reasonable rate of return by raising rates or canceling policies for reasons other than those proscribed by NRS 687B.385.

Additionally, NRS 687B.385 is constitutionally valid on its face because the constitutional requirement of a fair and reasonable

---

[7]It is worthwhile to note that the court in *Guaranty* only discussed the constitutional challenge in that case in terms of a facial challenge. The *Guaranty* court never reached the appellant's "as applied" argument. *See Guaranty*, 916 F.2d at 516.

rate of return does not apply to each individual policy. Instead, this constitutional mandate applies to the entire range of policies issued by an insurer. The constitutional infirmity in *Guaranty* was that the rollback provision mandated that insurers reduce rates on an entire class of business, irrespective of any individual factors. In contrast, NRS 687B.385 applies only to those policies where insurers attempt to cancel policies or increase premiums because an insured has submitted claims for which the insured is not at fault. While NRS 687B.385 may necessitate an insurer sustain a loss on an individual policy, unlike the statutory scheme invalidated in *Guaranty*, NRS 687B.385 does not deprive an insurer a fair and reasonable rate of return on homeowners protection. Therefore, NRS 687B.385 is not facially unconstitutional.[8]

## CONCLUSION

We conclude that the pre-1997 version of NRS 687B.385 applied to homeowner's insurance policies. Furthermore, we conclude that Nevada's Constitution requires that regulations fixing prices must guarantee a fair and reasonable return, and that NRS 687B.385 is not facially invalid.

---

[8]Safeco may be able to present evidence to the United States District Court that NRS 687B.385 does, in fact, deny them a fair and reasonable return. If such evidence is presented at trial, the federal district court will then be able to ascertain whether NRS 687B.385 is unconstitutional as applied to Safeco. However, we take this opportunity to reiterate that because of the procedural posture of this case, we only address the facial validity of the statute. In this regard, it is clear to us that NRS 687B.385 is not unconstitutional on its face.